UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LARRY DARNELL JONES,

        Plaintiff,

v.

UNKNOWN HORSLEY et al.,

        Defendants.

Case No. 1:18-cv-298

Honorable Robert J. Jonker

_____/

# **OPINION**

This is a civil rights action brought by a former state prisoner under 42 U.S.C. § 1983. Plaintiff was released on parole a couple of weeks before he filed this action. Nonetheless, Plaintiff is proceeding *in forma pauperis*; thus, the Court is required to dismiss the action if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner,* 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Freeman, McDaniels, Messer, Bruch, Dumas, Smith, Spencley, Ball, Mackie, Griffin, and McKee. The Court will also dismiss Plaintiff's Eighth Amendment claim against Defendant Sergeant Unknown Porter. The Court will serve the complaint on Defendant Unknown Horsley with respect to Plaintiff's Eighth Amendment and First Amendment claims and against Defendant Porter with respect to Plaintiff's First Amendment claim.

**Discussion**

I.        Factual allegations

The events of which Plaintiff complains occurred while he was incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. Plaintiff sues ECF Corrections Officers Unknown Horsley, Unknown Freeman, K. McDaniels, Unknown Messer, and Unknown Bruch; ECF Sergeant Unknown Porter; ECF Nurse Lori L. Dumas; ECF Administrative Assistant Eric Smith; ECF Inspector John G. Spencley; ECF Deputy Warden Timothy J. Ball; and ECF Warden Thomas P. Mackie. Plaintiff also sues MDOC Administrator Miffer Griffin and MDOC Deputy Director Kenneth T. McKee.

Plaintiff alleges that on November 13, 2016, while conducting a shakedown, Defendant Horsley pounded on Plaintiff's chest. Plaintiff contends the blow(s) damaged his heart valve which must now be surgically replaced. Plaintiff filed a grievance against Defendant Horsley based on the incident. All of the other Defendants are named because they played some role in responding to Plaintiff's injury or his grievance.

Plaintiff names Defendant McDaniels and Defendant Freeman because they ordered Defendant Horsley to conduct the shakedown. Plaintiff does not contend that McDaniels or Freeman ordered Horsley to pound on Plaintiff's chest to cause injury, only to conduct a shakedown.

Plaintiff filed a grievance regarding Horsley's actions, claiming that Horsley used excessive force. On November 23, 2016, the grievance was reviewed by Captain Holden and Lieutenant O'Brian. They noted that Defendant Horsley denied pounding on Plaintiff's chest. They reviewed the incident as "'clearly captured on the video recorder.'" (Compl., ECF No. 1, PageID.8.) They concluded that the grievance was "totally false." (*Id.*, PageID.9.) Defendant

Mackie responded to the grievance at Step II. He upheld the Step I decision. Grievance Section Manager Richard D. Russell upheld the decision at Step III.

Plaintiff sought medical treatment for the problems he alleges following Defendant Horsley's pounding of Plaintiff's chest. He informed the nurse, Defendant Dumas, that Defendant Horsley had pounded on Plaintiff's chest. Defendant Dumas recorded that information in her report, along with a statement that custody staff said it did not happen. Plaintiff also alleges that he told Defendants Messer and Bruch about Horsley's excessive use of force. Apparently, based on Plaintiff's report to Defendant Dumas, or perhaps to Defendants Messer or Bruch, Defendant Porter, after reviewing the video recording of the incident, wrote a minor misconduct report against Plaintiff for lying to an employee. The report was written before Plaintiff filed his first grievance. (*Compare* MDOC Misconduct Report, ECF No. 1-1, PageID.57 *with* ECF Grievance 2016 113445176, ECF No. 1-1, PageID.52.) Although the misconduct report was served on Plaintiff, it was never pursued. Plaintiff claims the report was abandoned because it was determined to be "definitely false." (Compl., ECF No. 1, PageID.11.)

Plaintiff filed a grievance against Defendants Dumas and Porter claiming they retaliated against him for reporting that Defendant Horsley pounded on Plaintiff's chest. ECF Grievance Coordinator Bassett denied the grievance at Step I as vague. Defendant Mackie and Richard D. Russell upheld the decision at Steps II and III, respectively.

The day after the incident, Plaintiff submitted a health care request to start the process of ordering surgery to replace his heart valve. Defendant Dumas responded that Plaintiff could discuss the issue with the medical provider at his appointment three weeks thereafter. The next day, Plaintiff submitted a health care request because of dizziness, numbness, high blood

3

pressure, and sweating. Nurse Tasha Farris examined Plaintiff and directed him to seek assistance again if the symptoms returned or increased.

Plaintiff claims that on November 18, 2016, Defendant Horsley threatened to write a misconduct ticket on Plaintiff for filing a grievance against Horsley. Plaintiff then filed a grievance regarding the threat. The grievance was denied at Step I. The denial was upheld at Step II by Defendant Mackie and at Step III by Richard D. Russell.

Defendant Horsley did not write a misconduct ticket. He did, however, write a memorandum to Captain Holden where he indicated that Plaintiff had lied in his grievance and should be charged with a misconduct. Under MDOC policy, such a misconduct report cannot be pursued without specific approvals:

> If a grievant intentionally files a grievance which is investigated and determined to be unfounded which, if proven true, may have caused an employee or a prisoner to be disciplined or an employee to receive corrective action, the grievant may be issued a misconduct report if approved by the Warden or FOA Area Manager; however, major misconduct for Interference with the Administration of Rules shall be issued only if approved by the Warden or FOA Area Manager after consultation with the appropriate Deputy Director or designee.

MDOC Policy Directive 03.02.130 ¶ L (eff. 7/9/2007). Defendants Eric Smith, Miffer Griffin, Timothy Ball, Thomas Mackie, and Kenneth T. McKee, all played a role in obtaining or providing the necessary approvals to permit the pursuit of such a misconduct report against Plaintiff. Defendant John G. Spencley actually wrote the misconduct as the reporting staff member.

Hearing Officer Burke dismissed the charge because the video was not made available for the hearing, ostensibly for security reasons. Burke indicated that because the charge required the demonstration that the prisoner knew the allegation was false, a statement of staff to that effect would not be sufficient.

Plaintiff then grieved McKee, Mackie, Ball, Smith, Griffin, and Spencley for retaliating against him for filing the grievance in violation of the First Amendment and failing to protect him from Horsley in violation of the Eighth Amendment.

In Count I of his complaint, Plaintiff contends that Defendant Horsley violated the Eighth Amendment when he used excessive force that damaged Plaintiff's heart valve. He contends further that defendants Freeman and McDaniels are liable for ordering the shakedown that resulted in the excessive use of force.

In Count II of his complaint, Plaintiff contends that Defendant Horsley violated the Eighth Amendment by failing to protect Plaintiff from Defendant Horsley. He claims further that Defendants Messer, Bruch, Porter, and Dumas violated the Eighth Amendment because they failed to protect Plaintiff from Defendant Horsley and failed to report him. Similarly, Plaintiff claims that Defendants Smith, Griffin, Spencley, Ball, Mackie, and McKee violated the Eighth Amendment because they failed to protect Plaintiff from Defendant Horsley and from the allegedly false misconduct report.

Finally, in Count III of his complaint, Plaintiff contends that Defendants Porter and Dumas violated Plaintiff's First Amendment rights when they retaliated against him for filing grievances on November 13 and 18, 2016, and for complaining about Horsley's excessive use of force to Dumas, Messer, or Bruch. Plaintiff accuses Defendant Horsley of also violating Plaintiff's First Amendment rights by retaliating against Plaintiff when he complained that Plaintiff had filed a false grievance against Horsley. Finally, Plaintiff accuses Defendants Smith, Griffin, Ball, Mackie, McKee, and Spencley for violating Plaintiff's First Amendment rights by retaliating against him for filing the grievance against Horsley by filing or otherwise pursuing the major misconduct report.

Plaintiff seeks $1,300,000,000.00 in compensatory and punitive damages, $100,000,000.00 from each of the 13 Defendants.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

6

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff complains that Defendants violated his Eighth Amendment rights by virtue of Defendant Horsley's excessive use of force or all Defendants' failures to protect him from that use of force. Plaintiff also complains that the Defendants retaliated against him for his filing of a grievance against Horsley, conduct protected under the First Amendment.

### III. Eighth Amendment

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers,* 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Plaintiff's allegations suffice to state a claim that Defendant Horsley used excessive force in violation of the Eighth Amendment.

7

Plaintiff claims the other Defendants are liable for Horsley's use of excessive force. Plaintiff attempts to pin responsibility on Defendants McDaniels and Freemen because they ordered the shakedown that resulted in the excessive use of force. He attempts to impose liability on the remaining Defendants because they were made aware of Plaintiff's allegations that Horsley used excessive force, but did nothing to correct the problem. Finally, he suggests that the other Defendants might be liable because they failed to protect Plaintiff from Horsley. None of the allegations are sufficient to state a claim.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that any Defendant other than Horsley engaged in any active unconstitutional behavior with respect to the excessive use of force.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged

"to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina,* 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Plaintiff's complaint suggests that Defendants might be liable under such a "failure to protect" theory. His claim falls short, however, because he fails to allege that any of the other Defendants knew that Defendant Horsley posed a risk to Plaintiff's safety prior to the chest-thumping during the shakedown on November 13, 2016. Accordingly, Plaintiff fails to state a claim against the other Defendants for failing to protect him.

IV.     First Amendment Retaliation

Plaintiff next argues that Defendant Horsley retaliated against Plaintiff for his exercise of the right to file a grievance against Horsley for Horsley's excessive use of force. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise

of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends his filing of a prison grievance is protected under the First Amendment. The Sixth Circuit Court of Appeals has concluded that the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Maben v. Thelen*, No. 17-1289, 2018 WL 1599335, * 6 (6th Cir. Apr. 3, 2018) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *Smith*, 250 F.3d at 1037.

If Plaintiff is telling the truth about Defendant Horsley's excessive use of force, his grievance is nonfrivolous and protected under the First Amendment. On the other hand, if Plaintiff is not telling the truth, his grievance would not be protected because it is frivolous or, alternatively, because it violates prison regulations. MDOC Policy Directive 03.02.130 ¶ L. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus–X*, 175 F.3d at 395. Plaintiff alleges that his grievance statements regarding Defendant Horsley were true. The Court must accept that allegation as true at this stage of the litigation.

With respect to Defendant Horsley, therefore, the Court assumes that Plaintiff's conduct in filing the grievance was protected by the First Amendment. If so, Defendant Horsley's written report—the report stating that the grievance was false and worthy of a misconduct charge for interference with the administration of rules--was knowingly false and was not only adverse action, but also plainly motivated by the protected conduct. Although a misconduct ticket does not have to be false to be retaliatory, it is often the falsity of the accusation combined with its timing that suffice to reveal a retaliatory motive. The statement of a retaliatory motive is further

supported in Plaintiff's complaint by the allegation that Horsley expressly threatened to write a major misconduct ticket against Plaintiff because he filed the grievance. Thus, Plaintiff states a First Amendment retaliation claim against Defendant Horsley.

Plaintiff's allegations fall short, however, as to most of the other Defendants. Plaintiff does not allege that Defendants Freeman, McDaniels, Messer, or Bruch took any retaliatory adverse action as a result of a grievance. Those Defendants are not included in Plaintiff's First Amendment claim.

Plaintiff alleges that Defendants Griffin, Smith, Spencley, Ball, Mackie, and McKee took adverse action, but his allegations demonstrate that the adverse actions were not in response to protected conduct. They took action based on the representation from Defendant Horsley that the statements in the grievance were false. Even if Plaintiff's grievance statements were actually true, those Defendants acted in response to reported conduct that violated a legitimate prison regulation. There is no indication in Plaintiff's complaint that these Defendants witnessed the assault or viewed the video such that their pursuit of the grievance against Plaintiff was knowingly false. Moreover, none of these Defendants have made express statements of a retaliatory motive to Plaintiff as Horsley did. Plaintiff claims that these Defendants "retaliated" (Compl., ECF No. 1, PageID.48), but the claim is entirely conclusory.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

11

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation with respect to these Defendants. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed a grievance against Horsley. Accordingly, his speculative allegation fails to state a claim because it fails to link the adverse action to the protected conduct through a retaliatory motive.

The same is true with respect to Defendant Dumas. Plaintiff has failed to allege that she was motivated by retaliation for protected conduct when she took action against Plaintiff. Plaintiff acknowledges Defendant Dumas was told that Plaintiff was not telling the truth. Plaintiff's complaint does not state that Defendant Dumas witnessed the event or viewed the video.

Finally, with respect to Defendant Porter, if Plaintiff's statements regarding Horsley's conduct are accepted as true, then Porter's statements regarding what he saw on the video are false. Nonetheless, Plaintiff's allegations that Defendant Porter wrote a Class III minor misconduct in retaliation for Plaintiff's grievances cannot stand because the misconduct ticket was written prior to the grievances. That claim puts the cart in front of the horse. Plaintiff's allegation that the misconduct ticket was written in retaliation for the protected conduct of complaining about Horsley's excessive use of force to Dumas, Messer, or Bruch, however, has the horse and the cart in the right order.

The pursuit of a formal prison grievance is conduct protected by the First Amendment. In *Maben,* 2018 WL 1599335, the Sixth Circuit Court of Appeals clarified that

grievances need not be formal to deserve First Amendment protection. Maben voiced a complaint about the inadequate portion of food he received in the lunch line. The Court concluded that Maben was "pursuing a grievance about prison conditions and seeking redress of that grievance[; a]ccordingly, Maben was engaged in protected conduct." *Id*. at *7. Under that reasoning, Plaintiff's complaints to Dumas, Messer, or Bruch would also be protected conduct.

Moreover, although the misconduct ticket was for a Class III offense and Plaintiff never suffered any consequence from the ticket, the potential penalties included up to five days of confinement to quarters, up to fifteen days' loss of privileges, and up to 20 hours of extra duty. The *Maben* Court indicated that being subjected to the risk of such sanctions is not inconsequential and, therefore, might deter protected conduct. *Id*. at *8-9.

The timing of Defendant Porter's writing of the misconduct ticket, combined with his knowledge that it was false, are material facts supporting Plaintiff's claim that the misconduct ticket was retaliatory. Accordingly, Plaintiff has sufficiently stated a claim against Defendant Porter for retaliation in violation of Plaintiff's First Amendment rights.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Freeman, McDaniels, Messer, Bruch, Dumas, Griffin, Smith, Spencley, Ball, Mackie, and McKee will be dismissed for failure to state a claim, under 28 U.S.C. § 1915(e)(2). Plaintiff's Eighth Amendment claims against Defendant Porter will also be dismissed for failure to state a claim. The Court will serve the complaint against Defendant Horsley with respect to Plaintiff's claims under the Eighth Amendment and the First Amendment and against Defendant Porter with respect to Plaintiff's claim under the First Amendment.

An Order consistent with this Opinion will be entered.

Dated:   April 30, 2018            /s/ Robert J. Jonker
                                                    ROBERT J. JONKER
                                                    CHIEF UNITED STATES DISTRICT JUDGE